# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| JACK BROWN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:12-cv-01712-TWP-DML ) |
| KEVIN SMITH in his individual and official capacity as Mayor of the City of Anderson, and CITY OF ANDERSON, | ) ) ) ) |
| Defendants. | ) ) |

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant Kevin Smith's ("Mayor Smith") and the City of Anderson's ("the City") (collectively, "the Defendants"), Motion for Summary Judgment (Dkt. 32). Plaintiff Jack Brown ("Mr. Brown"), a twenty-eight year employee of the City of Anderson Transit System, asserts claims against the City and Mayor Smith, in both his official and individual capacity, for violations of the Americans with Disabilities Act (as amended), 42 U.S.C. § 12101 *et seq.* ("ADAA") for failure to accommodate his disability, and under 42 U.S.C. § 1983 ("§ 1983") for violations of his rights under the First Amendment of the United States Constitution. Specifically, Mr. Brown contends that his termination following the 2011 election was for political reasons and in violation of the ADAA. For the reasons set forth below, the Defendants' Motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

Mr. Brown has had a long history of involvement with the Democratic Party in Anderson, Indiana. He has been a precinct committeeman for the Democratic Party since 1989, as well as a member of the Madison County Rooster Club, an organization that helps raise funds for and elect

Democratic candidates. Mr. Brown knew Mayor Smith personally, as they met with Mayor Smith was a Democrat running for county councilor some time prior to 2003. In 2003 Smith switched parties and was successfully elected Mayor of Anderson as a Republican candidate and served a four-year term. Thereafter, the City had a Democratic Mayor until Smith was again elected in November 2010 as a Republican Mayor.

Mr. Brown first became an employee of the City of Anderson Transit System ("CATS") in 1984. He started out as a part-time bus driver and worked his way up to the position of Street Supervisor. During those twenty-eight years, Mr. Brown worked in a number of positions in CATS under both Democratic and Republican mayoral administrations. At the time he was hired, Mr. Brown possessed a valid Commercial Driver's License ("CDL") which was required by law in order to operate a vehicle that was capable of carrying more than sixteen occupants, including the driver. When Mr. Brown moved from the position of Bus Driver to Dispatcher and Crew Leader in 1994, he allowed his CDL to lapse, leaving him with only a regular operator's license. While working as a Dispatcher, Mr. Brown developed insulin-dependent diabetes. Insulin dependent diabetes requires a special waiver from the federal government and specialized medical examination. During the ten to twelve years he worked as Dispatcher and Crew Leader, Mr. Brown did not operate vehicles and thus was not required to hold a CDL.

When Mayor Smith was elected to his first term as mayor in 2003, Mr. Brown was demoted to the position of Mechanic's Helper, and moved from the day shift to the evening shift. The job description for Mechanic's Helper required a CDL. The issue of Mr. Brown's lack of CDL was raised because the Mechanic's Helper position required Mr. Brown to take a more active role in moving buses and other city vehicles around the transit garage than the Dispatcher position required. To resolve this issue, the Union, of which Mr. Brown became a member when

he became a Mechanic's Helper, filed a grievance on his behalf. The grievance was resolved with the City agreeing to relieve Mr. Brown from two duties within his job description that he was unable to perform due to his diabetes, including his inability to obtain a CDL.

In 2008, after Mayor Smith was defeated by Kris Ockomon, Mr. Brown was promoted to the position of day shift Street Supervisor by Merele Jones ("Mr. Jones"), who Mayor Ockomon had hired as General Manager of CATS. Mr. Brown replaced Mark Baugher ("Mr. Baugher"), who had been promoted to the Director of Operations of CATS. Although the Street Supervisor job description required a CDL, Mr. Brown was informed by his supervisors, Mr. Jones and Mr. Baugher, that he did not need a waiver of the same sort as he had received as Mechanic's Helper because he would not be hauling passengers. As the Street Supervisor, Mr. Brown drove a supervisor's van to supervise routes, which was a mini-van that could carry no more than three passengers. Mr. Brown's job as Street Supervisor was to make sure the buses stayed on schedule, pick up passengers stranded due to bus breakdowns, and to investigate bus accidents and write reports regarding those accidents. He was also responsible for supervising and directing CATS bus drivers and making recommendations to the department supervisor and the Accident Committee, which determined fault for accidents involving CATS drivers. Because Mr. Brown did not have a CDL, he could not perform one of the duties of Street Supervisor, which was to "[o]ccasionally perform duties of bus Drivers and drive[] Nifty Lift[1] and City bus charter as necessary." Dkt. 31-2 at 16. When staff was short, CATS would call in a part-time driver to perform these driving duties, and Mr. Brown did not drive city buses or the Nifty Lift during his time as Street Supervisor. Mr. Brown held the day shift Street Supervisor position for four years, from 2008 until January 2012.

---

[1] The Nifty Lift is another CATS commercial vehicle designed to transport elderly and disabled passengers who could not use the CATS regular buses.

3

In 2011, Kevin Smith again ran against, and defeated, Mayor Ockomon. During the mayoral campaign, Mr. Brown actively campaigned for Mayor Ockomon, including giving donations to his campaign fund, putting up signs, and walking door-to-door as part of his duties as precinct committeeman. Following the election, but before Mayor Smith took office, Mr. Brown called Mayor Smith and inquired about the status of his job. Mayor Smith told him that there would be "a lot of changes," but did not address anything specific regarding Mr. Brown's position. Mayor Smith subsequently hired Stephon Blackwell ("Mr. Blackwell") to take over the position of General Manager of CATS, which had been vacated by Mr. Jones' retirement after the election. Mr. Blackwell, a Republican, was a retired law enforcement officer who previously worked in both the Anderson Sheriff's and Police Department, but did not work on Mayor Smith's campaign. After Mr. Blackwell took the General Manager position, he demoted Mr. Baugher from the Director of Operations position to second-shift Street Supervisor and replaced him with Rick Garrett. Mr. Blackwell had general concerns about the appearance and attitudes of the drivers, personnel, and the condition of the CATS building. However, at the time of Mr. Brown's termination, he had not communicated concerns about supervisors' appearance to Mr. Brown.

On January 17, 2012, Mr. Blackwell called Mr. Brown into his office for a meeting and informed Mr. Brown that he would be terminated from the day shift Street Supervisor position, as Mr. Blackwell planned to replace Mr. Brown with John Inholt, a CATS Driver. Mr. Blackwell asked Mr. Brown if he had his CDL, to which Mr. Brown replied that he did not and did not know whether he could get a waiver of the medical requirements of the CDL. Mr. Blackwell originally intended to demote Mr. Brown to the position of bus driver, but because he did not have, and could not obtain, a CDL, he instead terminated Mr. Brown. Mr. Brown

testified that he made the decision to replace Mr. Brown because he "wanted his people and the people that we going to be part of my team." The personnel notice for Mr. Brown's termination indicated that he was terminated because he was unable to obtain a CDL as required in the Street Supervisor job description. Additional facts will be addressed below as necessary.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

### III.   DISCUSSION

Mr. Brown asserts two claims, one for discrimination under the ADAA for failure to accommodate, and one under § 1983 for violations of his First Amendment rights for patronage dismissal.  Defendants make the argument that Mr. Brown was not terminated from the Street Supervisor position because he lacked a CDL; rather, the decision was made to demote Mr. Brown to Driver due to performance related issues, but this could not be done because he lacked a CDL.  Because there was no other position for Mr. Brown, Defendants argue, he had to be terminated.  However, the Personnel Notice terminating Mr. Brown stated that he was being terminated from the Street Supervisor position because he was unable to obtain a CDL as required by the job description.  Dkt. 40-2 at 16.  The City further reiterated this position in its appeal of the Department of Workforce Development's determination that Mr. Brown was entitled to benefits, stating that Mr. Brown was terminated because he did not possess a CDL as his job description required, and provided documentation of the Street Supervisor job description, not the Driver job description.  Dkt. 40-8; dkt. 40-2 at 6-7.  Thus, there is at least a dispute of fact as to whether Mr. Brown was terminated because he did not have a CDL as required for the Driver position, or whether he was terminated because he lacked a CDL as required for the Street Supervisor position.  Because the Personnel Notice and the documentation sent to the Department of Workforce Development stated that Mr. Brown was terminated from his position as a Street Supervisor because he lacked a CDL, and because the Court must construe the facts in light most favorable to the non-moving party, the Court will address Mr. Brown's claims as challenging his termination from the Street Supervisor position.

**A.   ADAA Claim – Failure to Accommodate**

Mr. Brown claims that the City discriminated against him by failing to accommodate his

disability. Under the ADAA, discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee[.]" 42 U.S.C. § 12112(b)(5)(A). Defendants argue that Mr. Brown's claim fails under the *McDonnell-Douglas* burden shifting approach; however, this is not the correct standard applicable to failure to accommodate cases. "In failure to accommodate claims, unlike disparate treatment claims, the *McDonnell-Douglas* burden-shifting approach is not necessary or appropriate." *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001) (citing *Weigel v. Target Stores*, 122 F.3d 461, 464 (7th Cir. 1997)). Instead, a *prima facie* case of failure to accommodate requires the plaintiff to show that he was a qualified individual with a disability, the employer was aware of the disability, and a failure by the employer to accommodate the disability. *Id.* Although Defendants utilized the incorrect analysis, there is some overlap with a *prima facie* showing for disparate treatment and failure to accommodate, so the Court will still consider the parties' arguments. Defendants do not argue that the City was unaware of Mr. Brown's disability, thus the Court needs only to look at the first and third factor of Mr. Brown's *prima facie* case.

   1.   **Qualified Individual with a Disability**

Mayor Smith argues that Mr. Brown's ADAA claim fails because he was not a qualified individual with a disability, as his inability to obtain a CDL made him unable to do the essential functions of the Street Supervisor position. A qualified person with a disability is someone who (1) has a disability but still satisfies the requisite skill, experience, education, and other job-related requirements of his employment position, and (2) can perform the essential functions of the position held or desired, with or without reasonable accommodation. 29 C.F.R. § 1630.2(m); *Budde v. Kane Cnty. Forest Preserve*, 597 F.3d 860, 862 (7th Cir. 2010). Mayor Smith does not

7

dispute the fact that Mr. Brown has a disability, namely his insulin-dependent diabetes. Therefore, the only issue the parties' dispute is whether Mr. Brown can perform the "essential functions" of the Street Supervisor position. While the Court must give consideration to the employer's judgment as to what functions of a job are essential and consider any written descriptions of the job as evidence of the job's essential functions, these are not the only considerations in making this determination. "Whether a particular function is essential is a factual determination that must be made on a case by case basis. In determining whether or not a particular function is essential, all relevant evidence should be considered." App'x to 29 C.F.R. § 1630. Thus the job description or what the employer argues to be an essential function of the job is not conclusive, and the Court may look to other factors to determine whether the employer has established whether the task at issue is essential to the job in question.

Mr. Brown argues that driving vehicles for which a CDL is required—the only task he could not perform due to his disability—is not an essential function to the job of Street Supervisor. The term "essential function" means "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). The term does not include "marginal functions of the position." *Id.* A job function may be considered essential for several reasons, including, but not limited to (1) the reason the position exists is to perform that function; (2) the limited number of employees available among whom the performance of that job function can be distributed; and/or (3) the function is highly specialized so that the employee is hired for his or her expertise or ability to perform the particular function. 29 C.F.R. § 1630.2(n)(2). The type of evidence that may be considered in determining whether a function is essential includes, but is not limited to

> (i) The employer's judgment as to which functions are essential;

(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

Based upon the above factors and the evidence presented with this motion, there is at least a dispute of material fact as to whether driving is an essential function of the Street Supervisor job. First, the primary purpose of the Street Supervisor job is not to drive commercial vehicles. While the written job description says that the Street Supervisor's duties include performing the duties of bus Driver and driving the City's Nifty Lift and bus charter, it also states that this task is performed "occasionally" and "as necessary." Dkt. 32-1 at 16. Mr. Brown testified in his deposition that he was never required to drive a commercial vehicle during his four year tenure as Street Supervisor, and if CATS was short staffed on drivers they would call in a part-time driver. Thus, there is no evidence that the Street Supervisor spends a great amount of time on this function, and the consequences for failure to perform the driving function were minimal. Second, there were not a limited number of employees that could perform the function. As demonstrated by CATS's prior practice for the four years Mr. Brown served as Street Supervisor, a part-time driver could be called in to perform driving duties, as well as other employees within CATS such as the Mechanic's Helper, which also lists occasionally performing the duties of Driver as a duty of the job. Dkt. 40-4 at 2. Third, there is no evidence

9

that the function is highly specialized or that Mr. Brown was hired for his expertise in driving commercial vehicles. Based on these considerations, balanced with consideration of Defendants' assertion that driving is an essential function of the Street Supervisor position and the written description of the job, the Court finds that there is at least a question of material fact as to whether the ability to drive commercial vehicles is an essential function of the Street Supervisor position. Thus, Defendants have not shown, as a matter of law, that Mr. Brown is not a qualified individual with a disability, and a question of fact exists on this issue precluding summary judgment.

### 2. Reasonable Accommodation

Defendants argue that it would have been an undue burden on CATS to retain Mr. Brown as the day shift Street Supervisor while exempting him from driving responsibilities. They argue that CATS's previous waiver of the CDL requirement while Mr. Brown was a Mechanic's Helper did not carry over to the Street Supervisor position, and that this was a voluntary accommodation that CATS was under no obligation to keep in place because it was greater than what was required by the ADAA. However, the CDL requirement had not been imposed on Mr. Brown while he was a Street Supervisor from 2008 to 2011. Because CATS had already made an accommodation in the four years prior to Mayor Smith's second term, the question for the Court is whether it was reasonable for CATS to withdraw that existing accommodation.

Reasonable accommodations may include job structuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, or similar accommodations for individuals with disabilities. 42 U.S.C. § 12111(9); *see also* 29 C.F.R. § 1630.2(o)(2)(ii). However, an accommodation may not impose an undue hardship on an employer. 29 C.F.R. § 1630.2(p). The factors considered in determining whether

the provision of a particular accommodation would be an undue hardship on an employer includes the impact of the accommodation upon the operation of the facility, including the impact on the ability of other employees to perform their duties, and the impact on the facility's ability to conduct business. *See* 29 C.F.R. § 1630.2(p)(2)(v); *Dey v. Milwaukee Forge*, 957 F. Supp. 1043, 1052 (E.D. Wis. 1996). "An accommodation that would result in other employees having to work harder or longer is not required under the ADA." *Dey*, 957 F. Supp. at 1052.

Defendants argue that "[i]t would be an undue burden to expect CATS to retain Brown as the sole day shift Street Supervisor when, by law, he is unable to perform driving responsibilities." Dkt. 33 at 19. However, they fail to support this argument with evidence regarding whether providing Mr. Brown with a CDL waiver for the Street Supervisor position would be an undue hardship on CATS. While Defendants argue that requiring a CDL is consistent with business necessity, there is no evidence or argument that Mr. Brown's lack of a CDL had an adverse impact on CATS's operations in the four preceding years Mr. Brown held the Street Supervisor position. There is also no argument or evidence that the part-time drivers called in to operate buses when CATS was short staffed required them to work longer or harder. Thus, Mayor Smith has not presented sufficient evidence for the Court to find that the accommodation—waiver of the CDL requirement—placed an undue burden on CATS. Even if the Court were to find that the CDL waiver previously afforded to Mr. Brown interfered with his ability to meet the reasonable expectations for the position, the City's obligation under the ADAA was to work with Mr. Brown to adjust the existing accommodation in an attempt to correct those problems, not withdraw the accommodation completely to his detriment. *See Isbell v. John Crane, Inc.*, No. 11 C 2347, 2014 WL 1153064, at *6 (N.D. Ill. Mar. 21, 2014).

11

The Court concludes that there are questions of material fact as to whether driving was an essential function of the Street Supervisor position, and as to whether waiving the CDL requirement for Mr. Brown would have imposed an undue burden on the City. Therefore, Defendants' motion for summary judgment on Mr. Brown's ADAA claim is **DENIED**.

## B. First Amendment Claim

Mr. Brown also asserts a claim of retaliation under the First Amendment for his removal, and ultimate termination, from the Street Supervisor position based upon his political activities opposing Mayor Smith's mayoral campaign. "To make out a prima facie case of First Amendment retaliation, a public employee must present evidence that '(1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in the employer's actions.'" *Peele v. Burch*, 722 F.3d 956, 959 (7th Cir. 2013) (quoting *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012)). At the summary judgment stage, the burden of proof is split between the two parties; the plaintiff must produce evidence that his speech was at least a "motivating factor" in the employer's decision to take retaliatory action against him, and then the burden shifts to the employer to rebut the causal inference raised by the plaintiff's evidence. *Kidwell*, 679 F.3d at 965. "If the employer fails to counter the plaintiff's evidence, then the employer's retaliatory actions are considered a 'necessary condition' of the plaintiff's harm, and the plaintiff has established the but-for causation needed to succeed on his claim." *Id*. (citing *Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011).

Defendants challenge Mr. Brown's claim that his termination violated the First Amendment, arguing that the Street Supervisor position is exempt from First Amendment protection. It is well established that dismissals or demotions of public employees for reasons of

12

political patronage are violations of the First Amendment. *Riley v. Blagojevich*, 425 F.3d 357, 359 (7th Cir. 2005); *see also Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) ("The firing *or demotion* of an employee based on party affiliation violates the First Amendment.") (emphasis added). However, public employees may be exempt from this protection if the nature of the employee's job makes political loyalty a valid qualification for continued employment. *Riley*, 425 F.3d 359. "[T]his could be either because the job involves the making of policy and thus the exercise of political judgment or the provision of political advice to the elected superior, or because it is a job (such as speechwriting) that gives the holder access to his political superiors' confidential, politically sensitive thoughts." *Id.* (citing *Elrod v. Burns*, 427 U.S. 347, 367-68 (1976); *Branti v. Finkel*, 445 U.S. 507, 518(1980)).

Defendants do not dispute whether Mr. Brown was terminated for political reasons; rather, they only argue that the Street Supervisor position is exempt from First Amendment protection. While Defendants previously argued that Mr. Brown was terminated because he lacked a CDL, they do not dispute that political patronage was at least a motivating factor in the City's decision to terminate Mr. Brown. This is particularly supported by Mr. Blackwell's testimony that he decided to remove Mr. Brown from the Street Supervisor position not because he lacked a CDL, but because he "wanted [his] people in." Dkt. 40-7 at 11, Blackwell Dep. 37:15-16. In addition, Mr. Blackwell testified that he did not have any concerns about Mr. Brown's performance, nor did he express any of the alleged concerns about Mr. Brown's appearance, or how he handled a medical emergency with a passenger, to Mr. Brown prior to Mr. Blackwell's attempt to demote, and ultimately terminate, Mr. Brown. *Id.* at 11-12, Blackwell Dep. 35:23-25, 38:7-19, 39:5-40:14. Mayor Smith does not counter this evidence showing a causal inference between Mr. Brown's protected speech and his removal from the Street

13

Supervisor position. Thus, the only issue that is disputed is whether political loyalty is a valid qualification for the position of Street Supervisor such that Mr. Brown was exempt from First Amendment protection.

In general, employees who have merely ministerial duties with little discretion and employees whose discretion is channeled by professional rather than political norms are not within the exception. *Riley*, 425 F.3d at 360. Public officials may rely solely on an official job description as a safe harbor to determine whether political affiliation is an appropriate qualification. *Davis v. Ockomon*, 668 F.3d 473, 478 n.1 (7th Cir. 2012). The question of whether a position is exempted from the First Amendment patronage dismissal ban is typically a factual one that should ordinarily be left for a jury to determine. *Pleva v. Norquist*, 195 F.3d 905, 912 (7th Cir. 1999). Only in limited cases where the duties and responsibilities of a particular position are clearly outlined in an official job description may a court make such a determination as a matter of law. *Id.* (citing *Warzon v. Drew*, 60 F.3d 1234, 1240 (7th Cir. 1995); *Heck v. City of Freeport*, 985 F.2d 305, 310 (7th Cir. 1993)). Not every political patronage case can be resolved by just reading the job description, as "[t]he description might leave the reader unclear whether the job confers any policymaking or confidential discretion, and then additional evidence would be necessary." *Id.* at 365. In those instances, summary judgment would not be appropriate.

The parties do not dispute the accuracy or reliability of the Street Supervisor job description; rather, they dispute whether the description indicates that political loyalty is a valid qualification for continued employment, thus making it exempt from First Amendment protection. Defendants argue that Mr. Brown's duties of planning, directing and overseeing street operations and personnel, assuring compliance with applicable safety and scheduling

requirements, handling complaints from CATS patrons, and exercising independent judgment in making decisions in supervising the department's street operations all indicate that the Street Supervisor position requires political loyalty. However, viewing the facts most favorable to Mr. Brown as the non-moving party, the Court finds that these duties do not take the Street Supervisor position outside of the protection of the First Amendment as a matter of law. Being a supervisor and making independent judgments does not necessarily render a position one where political loyalty is a valid qualification. *Milazzo v. O'Connell*, 108 F.3d 129, 133 n.1 (7th Cir. 1997) ("[M]erely being a supervisor/administrator is not sufficient to show that political affiliation is an appropriate requirement for the job in question."); *Moss v. Martin*, 473 F.3d 694, 699 (7th Cir. 2007) ("The use of buzz words such as 'formulates policies,' 'broad latitude' and 'substantial independent judgment' in a position description does not transform professional or technical judgment into political judgment. . . ."). In addition, it appears from the job description that the Street Supervisor is guided more by professional rather than political norms, as the Street Supervisor is charged with complying with applicable safety and scheduling requirements in the operation of a transit authority. The Court concludes that there is at least a question of material fact as to whether political loyalty is a legitimate requirement for the job of Street Supervisor. Therefore, Defendants' motion for summary judgment on Mr. Brown's First Amendment claim is **DENIED**.

C.     **Qualified Immunity**

Mayor Smith argues that he is entitled to qualified immunity for the § 1983 claim asserted against him in his individual capacity.[2] "Government officials performing discretionary

---

[2] There is no individual liability under the ADAA, thus the issue of qualified immunity does not apply to this claim. "[I]ndividuals who do not independently meet the ADA's definition of 'employer' cannot be held liable under the ADA." *U.S. E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279 (7th Cir. 1995). To the extent Mr.

functions are entitled to qualified immunity from suit 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 352 (7th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). In addition to alleging facts that, if true, would constitute a violation of a constitutional right, the plaintiff must show that the case law was "clearly established" at the time of the alleged violation, so that a reasonable public official would have known that his conduct was unlawful. *Id.* A plaintiff is not required to find a factually indistinguishable case on point, but if there is no such case, he needs to offer a different explanation for why the constitutional violation is obvious. *Moss*, 614 F.3d at 712. Mr. Brown cannot rely upon the broad proposition that the First Amendment protects against certain political patronage firings; he must instead show that the violation was clear in the specific context of the case. *Id.*

Mr. Brown offers no additional evidence or support for his argument that Mayor Smith violated a well-established constitutional right aside from the proposition that the First Amendment protects against certain political patronage firings. Given the indefinite nature of the application of *Branti* to political patronage dismissal cases, which largely turns on the facts of each particular case, it cannot be said that Mr. Brown's termination violated a clearly established constitutional right. *See Flenner v. Sheahan*, 107 F.3d 459, 465 (7th Cir. 1997) ("[B]etween the strictly menial government worker . . . and the policymaker/confidential assistant . . . there is a range of government positions for which the propriety of patronage firing has depended largely on the courts' juggling of competing constitutional and political values.") (quoting *Upton v. Thompson*, 930 F.2d 1209, 1213 (7th Cir. 1991)). The Court finds that the Street Supervisor position is one such position that falls somewhere between the strictly menial

---

Brown attempts to assert claims under the ADAA against Mayor Smith individually, these claims are dismissed with prejudice.

governmental worker and the policymaking or confidential assistant position, thus it cannot be said that Mr. Brown's termination was an obvious violation of a constitutional right such that Mayor Smith should not personally be protected by qualified immunity. Therefore, the Court **GRANTS** Mayor Smith's motion for summary judgment on the issue of qualified immunity, and the § 1983 claim asserted against him in his individual capacity must be dismissed.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment (Dkt. 32). The Court **GRANTS** the motion with respect to the claims asserted against Mayor Smith in his individual capacity and **DISMISSES with prejudice** all claims asserted against him personally. The Court **DENIES** Defendants' motion as to the ADAA and § 1983 claims asserted against the City of Anderson and Mayor Smith in his official capacity.

**SO ORDERED**.

Date: 05/13/2014

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Richard Bruce Walker
walkerlaw8@gmail.com

Anthony W. Overholt
FROST BROWN TODD LLC
aoverholt@fbtlaw.com

Jeffrey A. Macey
MACEY SWANSON & ALLMAN
jmacey@maceylaw.com

Barry A. Macey
MACEY SWANSON AND ALLMAN
bmacey@maceylaw.com